```
                    FILED
          CLERK, U.S. DISTRICT COURT

                  1/20/26

          CENTRAL DISTRICT OF CALIFORNIA
          BY: ___MRV___ DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2025 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>       v.<br><br>YURIANA JULIA PELAEZ CALDERON<br>   and<br>YVETTE ESTRADA,<br>   aka "Edith,"<br><br>       Defendants | 2:25-CR-702(A)-SVW<br><br><u>F I R S T</u><br><u>S U P E R S E D I N G</u><br><u>I N D I C T M E N T</u><br><br>[18 U.S.C. § 371: Conspiracy to Impede, Obstruct, Impair, and Defeat the Lawful Function of Homeland Security Investigations Within Federal Jurisdiction and to Make False Statements; 18 U.S.C. § 1001(a)(2): False Statement to a Federal Agency.] |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 371]

[ALL DEFENDANTS]

A.   <u>INTRODUCTORY ALLEGATIONS</u>

   At all times relevant to this First Superseding Indictment:

   1.   The United States Department of Homeland Security ("DHS") was a United States Government Agency and responsible for safeguarding the borders of the United States including enforcing immigration laws.

2. The United States Department of Homeland Security, Homeland Security Investigations ("HSI"), was engaged in carrying out lawful governmental functions — specifically, investigating potential violations of federal law involving, among others, immigration crimes, financial crimes, crimes against the United States, obstruction, and responding to reported kidnappings/missing persons.

3. A core function of HSI was to investigate credible threats to public safety, including reports of kidnappings where federal agents were alleged perpetrators, to protect the public, safeguard the integrity of federal law enforcement, and ensure accurate allocation of investigative resources.

4. Allegations that an individual had been kidnapped were material to HSI's mission, because it triggered urgent investigative activity, coordination with other federal and state agencies, and allocation of substantial federal resources.

5. Defendant YURIANA JULIA PELAEZ CALDERON was a resident of Los Angeles, California. She was also a citizen of Mexico not lawfully present in the United States since 2023, when she overstayed her legal authority to remain in the United States.

6. Defendant YVETTE ESTRADA, also known as "Edith," was a resident of Bakersfield, California and a United States citizen.

7. On July 5, 2025, defendant CALDERON was voluntarily interviewed by HSI Special Agents and a HSI Task Force Officer near a shopping mall in Bakersfield, California.

8. On July 5, 2025, defendant CALDERON was voluntarily interviewed by HSI Special Agents and a HSI Task Force Officer at an HSI field office in Bakersfield, California.

9.  On July 29, 2025, defendant YVETTE ESTRADA was voluntarily interviewed by HSI Special Agents and a HSI Task Force Officer at a coffee shop in Bakersfield, California.

B.  **OBJECTS OF THE CONSPIRACY**

10. Beginning on a date unknown to the Grand Jury and continuing to on or about July 29, 2025, in Los Angeles County, within the Central District of California, and elsewhere, defendants CALDERON, ESTRADA, and others known and unknown to the Grand Jury, conspired with each other to:

   a.  Defraud the United States and agencies thereof, including DHS and HSI, by knowingly impeding, impairing, obstructing, and defeating the lawful governmental functions of DHS, during the investigation of an alleged kidnapping, by deceitful and dishonest means; and

   b.  Knowingly and willfully making a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the United States, in violation of Title 18, United States Code, Section 1001(a)(2).

B.  **MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED**

11. The objects of the conspiracy were to be accomplished, in substance, as follows:

   a.  Defendants CALDERON and ESTRADA, and others known and unknown to the Grand Jury, would fake defendant CALDERON's kidnapping by federal agents or surrogates acting on behalf of federal agents.

   b.  Defendants CALDERON and ESTRADA, and others known and unknown to the Grand Jury, would cause false information to be reported to the media and law enforcement that defendant CALDERON had

been "kidnapped" by masked men in plain clothes driving an unmarked vehicle, who were acting as federal agents or as surrogates of federal agents.

   c. Defendants CALDERON and ESTRADA, and others known and unknown to the Grand Jury, would falsely claim in the media and elsewhere that defendant CALDERON was being intimidated and forced to sign "voluntary removal" documents, in violation of federal law, so that DHS, HSI, and other federal agencies would investigate the matter, and then compensate defendant for violations of her civil rights.

   d. Defendants CALDERON and ESTRADA, and others known and unknown to the Grand Jury, would cause others to communicate false information about defendant's hoax kidnapping in the media and elsewhere in order to pressure DHS, HSI, and other federal agencies to divert resources toward investigating the hoax kidnapping, and to provide defendant with benefits.

   e. Defendants CALDERON and ESTRADA would conceal defendant CALDERON's true whereabouts from law enforcement officials, and others, in order to maintain the false narrative that she was kidnapped by government agents or their surrogates.

   f. During interviews with HSI agents and Task Force Officers, defendants CALDERON and ESTRADA, and others known and unknown to the Grand Jury, would willfully continue to lie about the hoax kidnapping, which would result in HSI expending additional resources in the investigation of the alleged kidnapping.

C. <u>OVERT ACTS</u>

  12. On or about the following dates, in furtherance of the conspiracy and to accomplish its objects, defendants CALDERON and

ESTRADA, and others known and unknown to the Grand Jury, committed the following overt acts, among others, within the Central District of California, and elsewhere:

<u>Overt Act No. 1</u>:   On June 25, 2025, defendant CALDERON falsely told Individual 1 that "immigration" was taking her while in or near a Jack in the Box restaurant on Alameda Street, in Los Angeles, California ("Jack in the Box").

<u>Overt Act No. 2</u>:   On June 25, 2025, defendant CALDERON falsely told Individual 1 that "they turned the lights on," "threatened to break her window" and were taking her into custody.

<u>Overt Act No. 3</u>:   On June 25, 2025, defendant CALDERON instructed Individual 1 to "wait an hour" before reporting her apprehension.

<u>Overt Act No. 4</u>:   On June 25, 2025, shortly after falsely telling Individual 1 that she was apprehended, defendant CALDERON walked away from the Jack in the Box and voluntarily got into a grey sedan being driven by defendant ESTRADA.

<u>Overt Act No. 5</u>:   On June 25, 2025, defendant ESTRADA drove defendant CALDERON from Los Angeles, California to Bakersfield, California, in order for defendant to remain hidden from law enforcement and others.

<u>Overt Act No. 6</u>:   On June 26, 2025, using false information provided by defendant CALDERON, a family member ("Individual 2") filed a false missing person report with the Los Angeles Police Department.

<u>Overt Act No. 7</u>:   On June 27, 2025, defendant CALDERON called Individual 2, who is an employee of a tenant-rights organization using the *67 feature to block her caller identification and claimed

5

that she had been taken by masked "authorities" to San Ysidro where defendant CALDERON – and others - were pressured to sign voluntary removal documents.

<u>Overt Act No. 8</u>:   On June 27, 2025, defendant CALDERON called an employee of a non-profit organization, using the *67 feature to block her caller identification, and falsely claimed that she had been moved to a warehouse in an unknown location where she was being held with other detainees.

<u>Overt Act No. 9</u>:   On June 28, 2025, defendant CALDERON called Individual 2, using the *67 feature to block her caller identification, and told Individual 2 that she was being held with someone from "B-18" (an immigration facility in Los Angeles) and another person who had been "picked up at a gas station in Bakersfield."

<u>Overt Act No. 10</u>:   On June 30, 2025, in Los Angeles, California, defendant CALDERON caused others—including immigrant-rights groups, tenant-rights groups, and non-profit organizations—to repeat her false claims at a press conference, demanding her "release" from custody.

<u>Overt Act No. 11</u>:   On June 30, 2025, defendant CALDERON and defendant ESTRADA traveled from Bakersfield to Earlimart, California, to look for locations to stage the rescue of defendant CALDERON.

<u>Overt Act No. 12</u>:   Between June 25, 2025, and July 3, 2025, defendant CALDERON voluntarily remained in Bakersfield, California, with defendant ESTRADA.

<u>Overt Act No. 13</u>:   On July 3, 2025, defendant CALDERON called Individual 2, using the *67 feature to block her caller

identification, and falsely claimed that she would be released soon because of all the media attention.

<u>Overt Act No. 14</u>:  On July 3, 2025, using false information provided by defendant CALDERON, Individual 2 established a GoFundMe.com fundraising page, seeking $4,500 to help the family, and stating that the family wanted to "find out where they have [defendant CALDERON]."

<u>Overt Act No. 15</u>:  On July 3, 2025, defendant CALDERON traveled from Bakersfield, California, to Earlimart, California, to fake her rescue.

<u>Overt Act No. 16</u>:  On July 3, 2025, defendant CALDERON altered her appearance to make it appear as if she had been mistreated while in custody, and defendant ESTRADA then took pictures of defendant CALDERON's altered appearance.

<u>Overt Act No. 17</u>:  On July 3, 2025, defendant CALDERON approached an individual ("T.S.") in Earlimart, California, and falsely told T.S. that she had just been dropped off by the "Border Patrol."

<u>Overt Act No. 18</u>:  On July 3, 2025, defendant CALDERON asked T.S. if T.S. would be a witness in her "case" against the "Border Patrol," because defendant CALDERON was going to sue the agency.

<u>Overt Act No. 19</u>:  From July 3, 2025, through July 5, 2025, defendant CALDERON and her family members turned off their phones and/or refused to return the phone calls of HSI agents and other law enforcement officials.

<u>Overt Act No. 20</u>:  On July 5, 2025, defendant CALDERON falsely and misleadingly claimed to federal law enforcement agents that "they already rescued me," "I am OK," "thank God."

7

<u>Overt Act No. 21</u>:  On July 5, 2025, defendant CALDERON falsely claimed to federal law enforcement agents and a HSI Task Force Officer that she had been "arrested" by masked men and detained in a warehouse for days.

<u>Overt Act No. 22</u>:  On July 5, 2025, defendant CALDERON falsely claimed to federal law enforcement agents and a HSI Task Force Officer that one of the "agents" detaining her told her that she would be released because her captivity had caused "a lot of attention from the media."

<u>Overt Act No. 23</u>:  On July 29, 2025, defendant ESTRADA falsely claimed to federal law enforcement agents and a HSI Task Force Officer that after she picked defendant CALDERON up near a Jack-in-the-Box in Los Angeles, California, she dropped defendant CALDERON off by the side of the road after Six Flags Magic Mountain.

<u>Overt Act No. 24</u>:  On July 29, 2025, defendant ESTRADA falsely claimed to federal law enforcement agents and a HSI Task Force Officer that between June 25, 2025, and June 30, 2025, defendant CALDERON did not spend any nights at defendant ESTRADA's home in Bakersfield.

//
//

                        COUNT TWO

                  [18 U.S.C. § 1001(a)(2)]

                   [DEFENDANT CALDERON]

1.   The Grand Jury realleges paragraphs 1 through 7 of this First Superseding Indictment here.

2.   On or about July 5, 2025, in Bakersfield, California, in a matter within the jurisdiction of the executive branch of the United States, specifically, DHS and HSI, defendant CALDERON knowingly and willfully made the following materially false statement and representation to Special Agents with HSI and HSI Task Force Officers, knowing that this statement and representation was untrue: Defendant CALDERON falsely stated that she had been kidnapped by men on June 25, 2025, down the street from a Jack in the Box restaurant, located in Los Angeles, California.  In truth, defendant CALDERON had not been kidnapped at any time in June 2025 or July 2025.

COUNT THREE

[18 U.S.C. § 1001(a)(2)]

[DEFENDANT CALDERON]

1.  The Grand Jury realleges paragraphs 1 through 7 of this First Superseding Indictment here.

2.  On or about July 5, 2025, in Bakersfield, California, in a matter within the jurisdiction of the executive branch of the United States, specifically, DHS and HSI, defendant CALDERON knowingly and willfully made the following materially false statement and representation to Special Agents with HSI and HSI Task Force Officers, knowing that this statement and representation was untrue: Defendant CALDERON falsely stated that her kidnappers took her to San Ysidro, where an agent asked her to sign paperwork, but when she refused, she was then taken to another location against her will.  In truth, defendant CALDERON had not been kidnapped at all and was staying at defendant YVETTE ESTRADA's home in Bakersfield.

|  |  |
|---|---|
| 1 | COUNT FOUR |
| 2 | [18 U.S.C. § 1001(a)(2)] |
| 3 | [DEFENDANT ESTRADA] |

1. The Grand Jury realleges paragraphs 1 through 7 of this First Superseding Indictment here.

2. On or about July 29, 2025, in Bakersfield, California, in a matter within the jurisdiction of the executive branch of the United States, specifically, DHS and HSI, defendant YVETTE ESTRADA, also known as "Edith," knowingly and willfully made the following materially false statement and representation to Special Agents with HSI and Task Force Officers with HSI, knowing that this statement and representation was untrue:

    a. Defendant ESTRADA falsely stated that after she picked defendant CALDERON up near a Jack-in-the-Box in Los Angeles, California, she dropped defendant CALDERON off by the side of the road after Six Flags Magic Mountain. In truth, after defendant ESTRADA picked defendant YURIANA JULIA PELAEZ CALDERON up near a Jack-in-the-Box, defendant ESTRADA drove defendant CALDERON to defendant ESTRADA's home in Bakersfield, California.

    b. Defendant ESTRADA claimed that between

//
//

1  June 25, 2025, and June 30, 2025, defendant CALDERON did not spend
2  any nights at defendant ESTRADA's home in Bakersfield. In truth,
3  defendant CALDERON stayed over at defendant ESTRADA's home in
4  Bakersfield each night between June 25, 2025 and July 5, 2025.

                                              A TRUE BILL


                                              /S/
                                              Foreperson

TODD BLANCHE
Deputy Attorney General

BILAL A. ESSAYLI
First Assistant United States
Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

J. MARK CHILDS
Assistant United States Attorney
Chief, Transnational Organized
Crime Section

LANA MORTON OWENS
Assistant United States Attorney
Deputy Chief, National Security
Division

JEHAN PERNAS KIM
Assistant United States Attorney
Deputy Chief, Transnational
Organized Crime Section